# Laws *v.* The State.

*Indictment for Murder.*

[DECIDED JUNE 7, 1905.]

1. *Criminal Law; Jurors; Drawing Special Venire.*—There is no error in a record showing that the special venire in a capital case was drawn by "The judge of this court," instead of saying that it was drawn by the "Presiding judge," since the presiding judge and the judge of the court are one and the same. (*Scott v. State*, 37 So. Rep. 366, distinguished.)

2. *Same; Same; Same.*—Where a court has two judges, a recital in the minutes that the special venire was drawn by the judge of the court will be presumed to refer to the judge presiding at that time, and that he was the judge who drew the same.

3. *Same; Same; Same.*—The act (Acts 1890-91, p. 561), requires that the special venire shall be drawn by the judge presiding at the time of such drawing, and does not require that it shall be drawn by the judge who presides on the trial of the case.

4. *Same; Same; Organization of Jury.*—Section 3 of Acts 1891-2, p. 641, requires that the jury shall be organized and empanelled by the court and not by the judge of the court.

5. *Same; Arraignment; Right of Defendant to Counsel; Plea in Abatement.*—Where a bill of exceptions recites that a defendant in a capital case was not represented by counsel on his arraignment, when he plead not guilty, but does show that the case had been set down for trial on two previous occasions and that he had the benefit of counsel each time, a plea in abatement subseqently filed comes too late, and is properly stricken from the files.

6. *Same; Evidence; Drunkenness; Manslaughter.*—Voluntary drunkenness excuses no man for the commission of a crime which does not involve a specific intent, or malice, regardless of his mental condition as a result therefrom. The most that can be claimed on such subject is that the fact of excessive drunkenness is sometimes admissible to reduce the grade of the crime, when the question of intent, malice, or premeditation is involved. Drunkenness is no defense to manslaughter, as it does not involve a specific intent.

7. *Same; Charge of Court; Self Defense.*—A charge requested of the court, based on the doctrine of self defense, which ignores the question of who provoked the difficulty, is faulty; and so is

[Laws v. The State.]

such charge, where it fails to define what constitutes self defense.

APPEAL from Jefferson Criminal Court.

Heard before the Hon. D. A. GREENE.

The appellant in this cause, Dave Laws, was tried under an indictment charging him with the murder of Neil Mullen. He was convicted of manslaughter in the first degree, and appeals.

It is unnecessary to set out the proceedings on drawing the special venire, or on organization of the jury, as they are sufficiently shown by the opinion for an understanding thereof. After two postponements, the defendant on the trial set up a plea in abatement to the effect that he was not represented by counsel on his arraignment, when he plead not guilty, and that his name was Dave Law, and not Dave Laws. On motion, the court struck this plea, on grounds shown by the opinion.

On the trial, the evidence for the State was to the effect that the deceased and one Kennedy had been playing pool in the pool and bar room of the defendant for drinks; that the deceased, losing the game, went with Kennedy to the bar and ordered drinks; the defendant appeared, when deceased said to him, "Dave you are not in on this drink." That thereupon the defendant cursed the deceased, who struck him with his open hand; that defendant went behind the bar, secured a pistol, and immediately shot deceased, striking him in the arm, and, as deceased fell, shot him again in the back, which last shot caused his death. This was brought out by declarations made by the deceased, immediately after he was shot, and after he expressed the opinion that he was dying.

The evidence for the defendant was the same, up to the point where it was said that the deceased struck the defendant. Defendant's witnesses testified further that, before the shooting, deceased struck defendant with a beer glass, and was threatening to strike again with it, when defendant fired. There was also testimony to the effect that at the time the defendant was very drunk. As the opinion states no proposition of law based upon the many and various objections to the evidence,

it is not deemed necessary to set them out. The defendant requested several written charges, to the effect that, if at the time of the killing he was so drunk that he could not be in law held responsible for his act, he must be acquitted. Also, other charges, numbered and as follows; 1. "If the jury believe from the evidence that the deceased was striking at the defendant with an open knife, and defendant shot to save his own life, then they must acquit the defendant." 3. "If from all the evidence, the jury have a reasonable doubt as to whether or not the defendant acted in self defense, or otherwise, they must give the benefit of the doubt to this defendant and acquit him."

STALLINGS & NESMITH and B. M. ALLEN, for appellant.—1. Appellant insists upon the first assignment of error. The minute entry shows that "The Judge of this court drew from the box etc." The act creating the Criminal Court of Jefferson county or the amendatory act prescribes that there shall be two judges of the Criminal Court of Jefferson County, in which court the defendant was tried. The statute prescribes that the *presiding* judge shall draw from the box the names and etc.—Sec. 5004 of the Code of 1896. The act entitled "An act to amend an Act entitled 'An Act to expedite the trial of capital cases in Jefferson County,' "prescribes that it shall be the duty of the *presiding* judge to draw from the jury box etc.,—this act having been approved February 11, 1889. There being two judges of the criminal Court of Jefferson County, the minute entry in this cause does not show that the judge actually presiding on the trial of said cause drew from the jury box the names etc.— See *Scott v. State,* 37 Southern Reporter 366.

Appellant will discuss jointly assignments of error numbers 4, 8, 9, 11, 19, 20, 21, 22, 25, 26.

2. Dying declarations must refer to the circumstances immediately attending the commission of the crime, and identifying the accused as the perpetrator of the crime. What happened a short time afterwards under the facts in this case would not constitute a part of the *res gestae.—Green v. State,* 66 Ala. 40; *Sylvester v. State,* 11 Ala. 17; *Walker v. State,* 52 Ala. 192; *State v. Stallings,*

[Laws v. The State.]

38 Southern Reporter 261.

The testimony for the State in the case at bar substantially shows that the second shot fired by the defendant was the fatal shot, and we insist that any statement made by deceased as a part of his dying declaration as to what occurred after the fatal shot was fired, could not be admissible under the rulings of this Court heretofore upon this subject.—*Green v. State,* 66 Ala. p. 40; *Sylvester v. State,* 11 Ala. p. 17; *Walker v. State,* 52 Ala. 192; *State v. Stallings,* 38 Sou. R. 261.

MASSEY WILSON, Attorney General for the State.

The first assignment of error is that the record shows that the special jurors were drawn by "The judge of this court," when such jurors should have been drawn by "The *presiding* judge of this court," and *Scott v. State,* 37 Southern 366, is relied upon. In the *Scott case* the minute entry shows that the jurors were drawn by the *court* and not by the presiding judge. In the case at bar the jurors were drawn under the authority of section one of the act of February 11th, 1891 (Acts 1890-1 p. 561). This act requires the jurors to be drawn by the presiding judge, as in the case of jurors drawn under the general statute. Referring the minute entry to the caption (R. p. 5), the court cannot escape the conclusion that the mandate of the statute was complied with. "The judge of this court" can only mean the *presiding* judge of the court. The term presiding is simply a designation of the judge who tries the case, and he is none the less the presiding judge because such designation is omitted.

The same point is made with reference to the organization of the jury when the case was tried. This, however, is without merit. Section 2 of the act referred to makes it the duty of the *court* to proceed to organize the jury, etc., and the record shows compliance with the statute.—(R. p. 9.)

The defendant offered to file a plea of misnomer. The solicitor moved to strike the plea on the ground that it came too late. The court heard evidence on the motion and it appeared that when the defendant was arrested he was not represented by counsel, and that he then

plead not guilty; that subsequently the case had been set for trial on two occasions, his attorney being present in court, and he had not offered to file his plea of misnomer on either occasion. The defendant testified that his name was Law and not Laws. The court granted the motion made by the solicitor and struck the plea.

Pretermitting the question of whether this court can review the action of the lower court, for that neither the plea nor the motion of the solicitor is set out in the bill of exceptions, the action of the court was entirely proper. The defendant had waived his right to plead in abatement. Moreover, whether he should have been permitted to withdraw his plea of not guilty rested in the discretion of the court below, and its action is not revisable.— *Hubbard v. State,* 72 Ala. 164; *Verberg v. State,* 137 Ala. 73.

It is the State's contention that everything that occurred, from the time that the defendant and Mullen met at the bar down to the point when defendant turned Mullen over as above stated, was one transaction and that the declarations of Mullen relating to these facts were admissible as dying declarations, being part of the *res gestae,* a proper predicate being laid for their admission. Exceptions 8, 9, 10, 11, 19, 20, 21, 22, 24, 25, 26, and 27 are without merit. The evidence brought out, and which was objected to by defendant, related to what occurred immediately before the shooting and immediately after, as above pointed out, and constituted part of the *res gestae,* and was admissible as the dying declarations of Mullen, it having shown that such declarations were made by Mullen under the belief of immediate or near death.—*Plant v. State,* 140 Ala. 52; *Pulliam v. State,* 88 Ala. 1; *Seams v. State,* 84 Ala. 1; *Smith v. State,* 88 Ala. 73.

If it should be held that evidence of the defendant's drunken condition at the time of the homicide may be introduced under the general issue for the purpose of reducing murder to manslaughter, it follows that many exceptions taken by the defendant to the action of the court to the admission and exclusion of evidence and refusal of the court to give the charges requested by the defendant, which exceptions and charges are referred to

on the preceding page, involve no injury to the defendant, for that he was convicted of manslaughter, and, had the evidence referred to been before the jury and the charges given as requested by the defendant, the jury could have done nothing more than was actually done,— find the defendant guilty of manslaughter.—*Jarvis v. State*, 138 Ala. 17, 39 ; *Mitchell v. State*, 133 Ala. 65, 71; *Parnell v. State*, 129 Ala. 615 ; *Winter v. State*, 123 Ala. 1, 10 ; *Evans v. State*, 109 Ala. 11; *Fallin v. State*, 83 Ala. 5, Code, § 4333.

ANDERSON, J.—The record shows that the special venire in this case was drawn by "The judge of this court" and while the statute required it to be done by the "Presiding judge," we think that the presiding judge and the judge of the court were but one and the same. The point decided in the case of *Scott v. State,* 37 So. Rep. 366, had no application, as it was held in that case that the court and the presiding judge did not mean the same.

It is true that there are two judges of the criminal court of Jefferson county, but we must presume that the judge of the court as recited in the minute entry was the judge presiding at the time the venire was drawn and was the judge that drew the same. We cannot accept the contention of counsel that the statute contemplates that the venire must be drawn by the judge who presides at the trial of the case. It means that the venire must be drawn by the judge presiding when the same is drawn and we think the "Judge of the court" means the judge presiding over the court when the venire was drawn. We do not think that the statute requires the venire to be drawn by the judge who tries the case. Under the Constitution circuit judges can hold courts for each other. One may preside the week the case is set and the venire is drawn and another may preside the next week and try the case, and we cannot believe that the statute prohibits such an exchange upon the theory that the venire must have been drawn by the judge presiding at the trial. On the other hand, capital cases may be set down for trial by one of the judges of the criminal court of Jefferson county, who draws the venires, and he may

get sick, or some other cause may prevent him from presiding at the trials, and we see no good reason why the other judge cannot try the cases, in so much that the venires were drawn by the judge who was at the time presiding and who was at the time the judge of the court in which the proceedings were had.

The defendant cannot complain of the recital of the judgment entry, that the jury was organized and empaneled by the court instead of the judge, as the law requires it to be done by the court.—Section 3 of Acts, 1891-2, page 641.

While the bill of exceptions recites that the defendant was not represented by counsel upon his arraignment and when he plead not guilty, it does show that the case had been set down on two previous occasions for trial and that he had the benefit of counsel each time. We think the plea in abatement came too late and was properly stricken.—*Verberg v. State,* 137 Ala. 73; *Hubbard v. State,* 72 Ala. 164. Besides, the record recites that the defendant's attorney was present at the arraignment and when he plead not guilty.

Voluntary drunkenness excuses no man for the commission of a crime which does not involve a specific intent, or malice, regardless of the nature and character of his mental condition, as a result therefrom. The most that can be claimed on such subject is that the fact of excessive drunkenness is sometimes admissible to reduce the grade of the crime, when the question of intent, malice, or premeditation is involved.—*Brown v. State,* 38 So. Rep. 268, and cases there cited. As manslaughter does not involve a specific intent, drunkenness is no defense, and all the charges predicating the defendant's acquittal upon his drunken condition were properly refused.

The defendant cannot complain in the case at bar of the refusal of his charges with reference to drunkenness, as he was acquitted of murder and drunkenness was no defense to manslaughter.—*Jarvis v. State,* 138 Ala. 17; *Winter v. State,* 123 Ala. 1; *Evans v. State,* 109 Ala. 11; *Fallin v. State,* 83 Ala. 5.

Charge 1 was properly refused. The deceased may have been striking at defendant with a knife and he may

have shot to save his own life, and still not have acted in self-defense, and the charge ignores the question of who provoked the difficulty.

Charge 3 was properly refused. It requires an acquittal whether the defendant acted in self-defense or not, and fails to define what constitutes self-defense.

There was no merit in any of the numerous objections to the evidence.

The judgment of the criminal court is affirmed.

McClellan, C. J., Dowdell and Denson, JJ., concurring.